IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Scott Honaker and Rhonda Honaker, | |
| *On behalf of themselves and those similarly situated*, | Case No. 2:18-cv-1528 |
| Plaintiffs, | Judge |
| v. | Magistrate Judge |
| Wright Bros. Pizza, Inc., and Thomas Wright, | Jury Demand Endorsed Hereon |
| Defendants. | |

CLASS AND COLLECTIVE ACTION COMPLAINT

1.      Scott Honaker and Rhonda Honaker, on behalf of themselves and all similarly-situated individuals, bring this action against Defendants Wright Bros. Pizza, Inc. and Thomas Wright ("Defendants"). Plaintiffs seek appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiffs and similarly-situated individuals with minimum wages and overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., the Ohio Constitution, Article II, Section 34a ("Section 34a"), the Ohio Minimum Wage Fairness Act ("OMFWSA"), O.R.C. 4111.01, *et seq*., O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), and O.R.C. § 2307.60.

2.      Defendants operate approximately 5 Domino's Pizza franchises in Ohio (the "Wright Bros." stores or restaurants).

3.　　Defendants repeatedly and willfully violated the Fair Labor Standards Act, the OMFWSA, the Ohio Constitution, and the Ohio Prompt Pay Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked.

4.　　Defendants maintain a policy and practice of underpaying their delivery drivers in violation of the FLSA, Section 34a, the OMFWSA, and the Prompt Pay Act.

5.　　All delivery drivers at the Wright Bros. stores, including Plaintiffs, have been subject to the same or similar employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

6.　　Plaintiffs bring this action on behalf of themselves and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

7.　　Plaintiffs also bring this action on behalf of herself and similarly situated current and former delivery drivers in Ohio, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of Section 34a, the OMFWSA, the Prompt Pay Act, and O.R.C. § 2307.60.

## Jurisdiction and Venue

8.　　Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiffs' FLSA claims.

9.　　Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' Ohio law claims.

10.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## PARTIES

**Plaintiffs**

**Scott Honaker**

11.     Plaintiff Scott Honaker is a resident of Ohio and, at all times material herein, Scott Honaker worked within the boundaries of Southern District of Ohio.

12.     Scott Honaker was an "employee" of all of the Defendant as defined in the FLSA, Section 34a, the OMFWSA, and the Ohio Prompt Pay Act.

13.     Scott Honaker has given written consent to join this action.

**Rhonda Honaker**

14.     Plaintiff Rhonda Honaker is a resident of Ohio and, at all times material herein, Plaintiff worked within the boundaries of Southern District of Ohio.

15.     Rhonda Honaker was an "employee" of all of the Defendant as defined in the FLSA, Section 34a, the OMFWSA, and the Ohio Prompt Pay Act.

16.     Rhonda Honaker has given written consent to join this action.

**Defendants**

**Wright Bros. Pizza, Inc.**

17.     Defendant Wright Bros. Pizza, Inc. is a domestic corporation authorized to do business under the laws of Ohio.

18.     Wright Bros. Pizza, Inc. is the corporate entity that appears on Plaintiffs' paystubs for the work she completed for Defendants.

19.     Wright Bros. Pizza, Inc. was founded by Thomas Wright.

20.     Wright Bros. Pizza, Inc. is headquartered in Pickerington, Ohio.

21.     Wright Bros. Pizza, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

22.     Wright Bros. Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

23.     At all relevant times, Wright Bros. Pizza, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

24.     Wright Bros. Pizza, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA, the OMFWSA, Section 34a, and the Ohio Prompt Pay Act.

25.     At all relevant times, Wright Bros. Pizza, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

26.     Wright Bros. Pizza, Inc.'s gross revenue exceeds $500,000 per year.

**Thomas Wright**

27.     Defendant Thomas Wright is an owner and operator of the Wright Bros. restaurants and Wright Bros. Pizza, Inc.

4

28.    Thomas Wright founded Wright Bros. Pizza, Inc.

29.    Thomas Wright is the president of Wright Bros. Pizza, Inc.

30.    Thomas Wright is individually liable to Wright Bros.'s delivery drivers under the definitions of "employer" set forth in the FLSA, OMFWSA, and Section 34a because he owns and operates the Wright Bros. stores, serves as a manager and/or member of Wright Bros. Pizza, Inc., ultimately controls significant aspects of Wright Bros. Pizza, Inc.'s day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

31.    At all relevant times, by virtue of his role as owner and operator of Wright Bros. Pizza, Inc., Thomas Wright has had financial control over the operations at each of the Wright Bros. stores.

32.    At all relevant times, as owner and operator of Wright Bros. Pizza, Inc., Thomas Wright has a role in significant aspects of the Wright Bros. stores' day to day operations.

33.    At all relevant times, by virtue of his role as owner and operator of Wright Bros. Pizza, Inc., Thomas Wright has had control over the Wright Bros. stores' pay policies.

34.    At all relevant times, by virtue of his role as owner and operator of Wright Bros. Pizza, Inc., Thomas Wright has had power over personnel and payroll decisions at the Wright Bros. stores, including but not limited to influence of delivery driver pay.

35.    At all relevant times, by virtue of his role as owner and operator of Wright Bros. Pizza, Inc., Thomas Wright has had the power to hire, fire and discipline employees, including delivery drivers at the Wright Bros. stores.

36.     At all relevant times, by virtue of his role as owner and operator of Wright Bros. Pizza, Inc., Thomas Wright has had the power to stop any illegal pay practices that harmed delivery drivers at the Wright Bros. stores.

37.     At all relevant times, by virtue of his role as owner and operator of Wright Bros. Pizza, Inc., Thomas Wright has had the power to transfer the assets and liabilities of Wright Bros. Corp.

38.     At all relevant times, by virtue of his role as owner and operator of Wright Bros. Pizza, Inc., Thomas Wright has had the power to declare bankruptcy on behalf of Wright Bros. Corp.

39.     At all relevant times, by virtue of his role as owner and operator of Wright Bros. Pizza, Inc., Thomas Wright has had the power to enter into contracts on behalf of each of the Wright Bros. stores.

40.     At all relevant times, by virtue of his role as owner and operator of Wright Bros. Pizza, Inc., Thomas Wright has had the power to close, shut down, and/or sell each of the Wright Bros. stores.

41.     At all relevant times, by virtue of his role as owner and operator of Wright Bros. Pizza, Inc., Thomas Wright had authority over the overall direction of each of Wright Bros. stores and was ultimately responsible for their operations.

42.     The Wright Bros. stores function for Thomas Wright's profit.

43.     Thomas Wright has influence over how the Wright Bros. stores can delivery run more profitably and efficiently.

## FACTS

6

## Class-wide Factual Allegations

44.     During all relevant times, Defendants have operated the Wright Bros. stores.

45.     Some or all of the Wright Bros. stores employs delivery drivers.

46.     Plaintiffs and the similarly situated persons Plaintiffs seek to represent are current and former delivery drivers employed by Defendants at the Wright Bros. stores.

47.     All delivery drivers employed at the Wright Bros. stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

48.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Wright Bros. stores building pizza boxes, cleaning, preparing pizza and other food items, and completing other duties inside the restaurant as necessary.

49.     At all relevant times, Plaintiffs and similarly situated delivery drivers have been paid minimum wage minus a tip credit for the hours they worked while completing deliveries.

50.     At all relevant times, Plaintiffs and similarly situated delivery drivers have been paid minimum wage or slightly above minimum wage for the hours they worked inside the restaurant.

51.     In or about 2014, Defendant Tom Wright attended a meeting held by Domino's corporate (Domino's Pizza, Inc., Domino's Pizza, LLC, and/or Domino's Franchising, LLC) where he learned that the PULSE System now allowed the Wright Bros. stores to pay delivery drivers a "dual rate," i.e., different rates for hours worked inside the store compared to outside the store.

52.     Upon returning from the meeting held by Domino's corporate, Wright changed the compensation policy at the Wright Bros. stores to a dual rate system—drivers were now paid full minimum wage inside the store, instead of a tipped wage rate.

7

53.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

54.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

55.     Pursuant to such requirements, Plaintiffs and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing charges, and incur cell phone and data charges all for the primary benefit of Defendants.

56.     Some of the Wright Bros. stores do not track or record their delivery drivers' actual expenses.

57.     None of the Wright Bros. stores track or record their delivery drivers' actual expenses.

58.     Some of the Wright Bros. stores do not reimburse delivery drivers for their actual expenses.

59.     None of the Wright Bros. stores reimburse delivery drivers for their actual expenses.

60.     Some of the Wright Bros. stores do not reimburse delivery drivers at the IRS standard business mileage rate.

61.     None of the Wright Bros. stores reimburse delivery drivers at the IRS standard business mileage rate.

62. Some of the Wright Bros. stores do not reimburse delivery drivers at a reasonable approximation of the delivery drivers' expenses.

63. None of the Wright Bros. stores reimburse delivery drivers at a reasonable approximation of the delivery drivers' expenses.

64. Plaintiffs and similarly situated delivery drivers receive a per-delivery reimbursement payment that amounts to less than the IRS standard business mileage rate for each mile they drive while completing deliveries for Wright Bros.

65. According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

     a.    2015: 57.5 cents/mile
     b.    2016: 54 cents/mile
     c.    2017: 53.5 cents/mile
     d.    2018: 54.5 cents/mile

66. The delivery drivers at Wright Bros. have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

67. As a result of the automobile and other job-related expenses incurred by Plaintiffs and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Ohio law.

68. At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at the Wright Bros. stores.

69. All of Defendants' delivery drivers had similar experiences to that of Plaintiffs. They completed similar job duties, were subject to the same reimbursement policy; received similar reimbursement payments; incurred similar automobile expenses; completed deliveries of

similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate or a tipped wage rate before deducting unreimbursed vehicle costs.

70. Regardless of the precise amount of the reimbursement formula at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

71. Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

72. Defendants are relying on the same flawed policy and methodology with respect to all delivery drivers at all of the Wright Bros. stores.

73. Defendants have failed to properly take a tip credit from Plaintiffs' wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

74. Prior to taking a tip credit from their wages, Defendants did not inform Plaintiffs and similarly situated delivery drivers of the amount of cash wage that would be paid to the delivery drivers.

75. Prior to taking a tip credit from their wages, Defendants did not inform Plaintiffs and similarly situated delivery drivers of the additional amount by which the wages of the delivery

driver are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee.

76.    Prior to taking a tip credit from their wages, Defendants did not inform Plaintiffs and similarly situated delivery drivers that all tips received by the delivery driver must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips.

77.    Prior to taking a tip credit from their wages, Defendants did not inform Plaintiffs and similarly situated delivery drivers that the tip credit shall not apply to any employee who has not been informed of these requirements of 29 C.F.R.§ 531.59.

78.    Defendants have willfully failed to pay federal and Ohio state minimum wage to Plaintiffs and similarly situated delivery drivers at the Wright Bros. stores.

**Plaintiffs' Individual Factual Allegations**

79.    Plaintiffs were subjected to all of the employment policies and practices described above.

80.    Scott Honaker worked for Defendants from August 2013 to November 8, 2018 as a delivery driver, and sometimes as a manager.

81.    Scott Honaker worked more than 40 hours in one or more workweeks as a delivery driver.

82.    Scott Honaker worked primarily at the Pickerington location, but also worked at the other locations, Lancaster, Canal Winchester, Potaskula, and Marysville.

83.     Until late 2017, Scott Honaker was paid minimum wage for all hours worked inside the restaurant, and minimum wage minus a tip credit for all hours worked on the road making deliveries.

84.     Since late 2017, Scott Honaker has worked "dual jobs," i.e., he worked some of his time as an assistant manager, when he was paid either $10 or $11 per hour.

85.     Also since late 2017, Scott Honaker has received $9 per hour while he worked inside the restaurant when he was working as a delivery driver, and minimum wage minus a tip credit for the hours he worked on the road.

86.     Scott Honaker drove approximately 12 miles round trip per delivery at the Pickerington store.

87.     At the Pickerington store, Scott Honaker was reimbursed $1.50 per delivery.

88.     At other locations, Scott Honaker was reimbursed different amounts, such as $1.15 or $1.25 per delivery. Scott Honaker was never reimbursed a per delivery amount that equaled the IRS rate for the miles he drove.

89.     Defendants' reimbursement policy was the same at all locations.

90.     Scott Honaker was not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

91.     During Scott Honaker's employment with Defendants, Defendants failed to adequately reimburse Scott Honaker for automobile and other job-related expenses.

92.     Scott Honaker regularly makes approximately 2-3 deliveries per hour during the hours he works as a delivery driver.

12

93.     Defendants' average effective reimbursement rate is $.125 per mile ($1.50 / 12 miles per delivery).

94.     In 2018, for example, the IRS business mileage reimbursement has been $.545 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using that IRS rate as a reasonable approximation of Scott Honaker's automobile expenses, every mile driven on the job decreased his net wages by approximately $.42 ($.545 - $.125) per mile. Considering Plaintiff's estimate of about 12 average miles per delivery, Defendants under-reimbursed him about $5.04 per delivery ($.42 x 12 average miles).

95.     Thus, Scott Honaker consistently "kicked back" to Defendants approximately $12.60 per hour ($5.04 per delivery x 2.5 deliveries per hour).

96.     Defendants have failed to properly take a tip credit from Scott Honaker's wages because they failed to inform him of the requirements for taking a tip credit and, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Scott Honaker they would be taking.

97.     As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Scott Honaker minimum wage as required by law.

98.     Rhonda Honaker worked for Defendants from July 2017 to November 8, 2018 as a delivery driver.

99.     Rhonda Honaker worked more than 40 hours in one or more workweeks.

100.    Rhonda Honaker worked primarily at the Pickerington location.

101.  Rhonda Honaker was paid minimum wage for all hours worked inside the restaurant, and minimum wage minus a tip credit for all hours worked on the road making deliveries.

102.  Rhonda Honaker drove approximately 12 miles round trip per delivery at the Pickerington store.

103.  At the Pickerington store, Rhonda Honaker was reimbursed $1.50 per delivery.

104.  Rhonda Honaker was not reimbursed at the IRS standard mileage rate for the miles she drives while completing deliveries.

105.  During Rhonda Honaker's employment with Defendants, Defendants failed to adequately reimburse Rhonda Honaker for automobile and other job-related expenses.

106.  Rhonda Honaker regularly makes approximately 2 deliveries per hour during the hours she works as a delivery driver.

107.  Defendants' average effective reimbursement rate is $.125 per mile ($1.50 / 12 miles per delivery).

108.  In 2018, for example, the IRS business mileage reimbursement has been $.545 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using that IRS rate as a reasonable approximation of Rhonda Honaker's automobile expenses, every mile driven on the job decreased his net wages by approximately $.42 ($.545 - $.125) per mile. Considering Rhonda Honaker's estimate of about 12 average miles per delivery, Defendants under-reimbursed him about $5.04 per delivery ($.42 x 12 average miles).

14

109. Thus, Rhonda Honaker consistently "kicked back" to Defendants approximately $10.08 per hour ($5.04 per delivery x 2 deliveries per hour).

110. Defendants have failed to properly take a tip credit from Rhonda Honaker's wages because they failed to inform him of the requirements for taking a tip credit and, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Rhonda Honaker they would be taking.

111. As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Rhonda Honaker minimum wage as required by law.

## Collective Action Allegations

112. Plaintiffs bring the First and Second Counts on behalf of themselves and all similarly situated current and former delivery drivers employed at the Wright Bros. restaurants owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

113. At all relevant times, Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiffs and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiffs' claims are essentially the same as those of the FLSA Collective.

114. Defendants' unlawful conduct is pursuant to a corporate policy or practice.

115. Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

116. Defendants' unlawful conduct has been widespread, repeated, and consistent.

117. The First and Second Counts are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

118. The FLSA Collective members are readily identifiable and ascertainable.

119. In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of a service award upon resolution of this action.

## Class Action Allegations

120. Plaintiffs bring the Third, Fourth, Fifth, and Sixth Counts under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendant at Wright Bros. Domino's stores in the State of Ohio between the date three years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Class").

121. Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

122. The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

123. The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

124. For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

125. Notice can be provided by means permissible under Rule 23.

126. The Rule 23 Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

127. There are more than 50 Rule 23 Class members.

128. Plaintiffs' claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

129. Plaintiffs and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Section 34a, the OMFWSA, and O.R.C. § 4113.15.

130. Plaintiffs and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

131. Plaintiffs are able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

132. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

133.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

134.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

135.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

    a.    Whether Plaintiffs and the Rule 23 Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage and overtime;

    b.    Whether Plaintiffs and the Rule 23 Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

    c.    Whether Plaintiffs and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

    d.    Whether Defendants reimbursed Plaintiffs and the Rule 23 Class members for their actual expenses;

    e.    Whether Defendants reimbursed Plaintiffs and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

      f.    Whether Defendants reimbursed Plaintiffs and the Rule 23 Class members based on a reasonable approximation of the expenses they incurred;

      g.    Whether Defendants failed to pay Plaintiff and the Rule 23 Class in a timely manner as described by O.R.C. § 4113.15, and, if so, whether the wages owed are "in dispute"; and

      h.    The nature and extent of class-wide injury and the measure of damages for those injuries.

136.     In recognition of the services Plaintiffs have rendered and will continue to render to the Rule 23 Class, Plaintiffs will request payment of a service award upon resolution of this action.

## Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiffs and the FLSA Collective)

137.     Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

138.     Plaintiffs and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

139.     Defendants failed to properly claim a tip credit from the wages of Plaintiffs and the FLSA collective because Defendants did not inform Plaintiffs of the requirements for taking a tip credit.

140.     Defendants failed to properly claim a tip credit from the wages of Plaintiffs and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

141.    Defendants paid Plaintiffs and the FLSA Collective at or close to minimum wage for all hours worked.

142.    Defendants required and continue to require Plaintiffs and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiffs and the FLSA Collective for said expenses.

143.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiffs and the FLSA Collective.

144.    Plaintiffs and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

145.    As a result of Defendants' willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Overtime Wages – Fair Labor Standards Act**
**(On Behalf of Plaintiffs and the FLSA Collective)**

146.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

147.    Plaintiffs and the FLSA Collective worked more than forty hours in one or more workweeks.

148.    Because Defendants required Plaintiffs and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay Plaintiffs and the FLSA Collective at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

149.     By not paying Plaintiffs and the FLSA Collective proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

150.     As a result of Defendants' willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 3**
**Failure to Pay Minimum Wages - Ohio Constitution, Article II, § 34a**
**(On Behalf of Plaintiffs and the Rule 23 Class)**

151.     Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

152.     Defendants paid Plaintiffs and the Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

153.     Defendants ostensibly paid Plaintiffs and the Rule 23 Class at or close to minimum wage for the hours they worked.

154.     Because Defendants required Plaintiffs and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiffs and the Rule 23 Class minimum wage.

155.     By not paying Plaintiffs and the Rule 23 Class at least minimum wage for each hour worked, Defendants has violated the Ohio Constitution, Article II, § 34a.

156.     As a result of Defendants' violations, Plaintiffs and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional two times unpaid wages/unreimbursed expenses in damages under Section 34a, costs, and attorneys' fees.

**Count 4**
**Failure to Pay Overtime Wages – Ohio Minimum Fair Wage Standards Act**
**(On Behalf of Plaintiffs and the Rule 23 Class)**

157.     Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

158.     Plaintiffs and the Rule 23 Class worked more than forty hours in one or more workweeks.

159.     Because Defendants required Plaintiffs and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay Plaintiffs and the Rule 23 Class at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

160.     By not paying Plaintiffs and the Rule 23 Class proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have violated the OMFWSA.

161.     As a result of Defendants' violations, Plaintiffs and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid overtime wages, unreimbursed expenses, costs, and attorneys' fees.

**Count 5**
**Untimely Payment of Wages – O.R.C. § 4113.15**
**(On Behalf of Plaintiffs and the Rule 23 Class)**

162.     Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

163.     During all relevant times, Defendants were covered by O.R.C. § 4113.15, and Plaintiffs and the Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

22

164. O.R.C. § 4113.15(A) requires that Defendants pay Plaintiffs and the Rule 23 Class all wages on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

165. By failing to pay Plaintiffs and the Rule 23 Class all wages due to them under the FLSA and Ohio Constitution, Defendants have also violated the Ohio Prompt Pay Act.

166. Plaintiffs and the Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

167. In violating Ohio law, Defendants acted willfully, without a good faith basis and with reckless disregard to Ohio law.

168. As a result of Defendants' willful violation, Plaintiffs and the Rule 23 Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

**Count 6**
**Damages Pursuant to O.R.C. § 2307.60**
**(On Behalf of Plaintiffs and the Rule 23 Class)**

169. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

170. The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

171. By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Plaintiffs and the Rule 23 Class have been injured as a result.

172. O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

173. As a result of Defendants' willful violations of the FLSA, Plaintiffs and the Rule 23 Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**WHEREFORE**, Plaintiffs Scott Honaker and Rhonda Honaker pray for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiffs and their counsel to represent the collective action members.

B. Unpaid minimum wages, unpaid overtime wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations for Plaintiffs and the FLSA Collective.

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D. Designation of Plaintiffs as representative of the Rule 23 Class and counsel of record as Class Counsel.

E. A declaratory judgment that the practices complained of herein are unlawful under Section 34a, the OMFWSA, and O.R.C. § 4113.15.

F. An award of unpaid minimum wages and unreimbursed expenses due under Section 34a.

G. An award of damages under Section 34a, based on Defendants' failure to pay wages, calculated as an additional two times of back wages.

H. Liquidated damages under O.R.C. § 4113.15.

I.      Compensatory and punitive damages under O.R.C. § 2307.60.

J.      An award of prejudgment and post-judgment interest.

K.      An award of costs and expenses of this action, together with reasonable attorneys'

fees and expert fees.

L.      Such other legal and equitable relief as the Court deems appropriate.


                                Respectfully submitted,

                                /s/ Andrew Kimble
                                Andrew Biller (0081452) (Lead Counsel)
                                Andrew Kimble (0093172)
                                Philip Krzeski (0095713)
                                Markovits, Stock & DeMarco, LLC
                                3825 Edwards Road, Suite 650
                                513-651-3700 (Phone)
                                513-665-0219 (Fax)
                                (*abiller@msdlegal.com*)
                                (*akimble@msdlegal.com*)
                                (*pkrzeski@msdlegal.com*)

                                www.msdlegal.com

                                *Counsel for Plaintiff and the putative class*

## JURY DEMAND

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Andrew Kimble
Andrew Kimble