# EXHIBIT 1

In the United States District Court
for the Southern District of Ohio
Eastern Division

| | |
|---|---|
| Scott Honaker, *et al.*, *On behalf of themselves and others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> Wright Bros. Pizza, Inc., *et al.*, <br><br> Defendants. | Case No. 2:18-cv-1528 <br><br> Chief Judge Algenon L. Marbley <br><br> Chief Magistrate Judge Elizabeth Preston Deavers |

Settlement Agreement and Release

This Settlement Agreement and Release (the "Agreement" or the "Settlement") is entered into by and between Plaintiffs Scott Honaker and Rhonda Honaker ("Plaintiffs") and FLSA Opt-In Plaintiffs, and, on the other hand, Defendants Wright Bros. Pizza, Inc., and Thomas Wright (collectively "Defendants"). Defendants and Plaintiffs will be collectively referred to as the "Parties."

The Parties agree as follows:

1. **Purpose and Background**

   A. On November 27, 2018, Plaintiffs initiated the lawsuit *Honaker v. Wright Bros. Pizza, Inc.* (the "Lawsuit"), currently pending in the United States District Court, Southern District of Ohio, Eastern Division (the "Court"), case number 1:18-cv-1528.

   B. On February 20, 2020, a Notice of Opportunity to Join Unpaid Wage Lawsuit was distributed to all individuals who worked for Defendants as delivery drivers at any time since November 27, 2015. A second Notice of Opportunity to Join Unpaid Wage Lawsuit was sent on June 26, 2020 to all individuals for whom the first Notice was returned as undeliverable and for whom the Claims Administrator had identified an alternate address. The Notice described the claims asserted by Plaintiffs and provided individuals an opportunity to opt into the case by returning their Consent to Join Form. 33 individuals returned consent to join forms to become parties to this, and will be referred to herein as the FLSA Opt-In Plaintiffs.

1

C. The Parties seek to resolve the claims raised in the Lawsuit by Plaintiffs and FLSA Opt-In Plaintiffs arising between November 27, 2015 and July 26, 2020. The Settlement does not affect anyone who did not return a Consent to Join Form.

D. Defendants deny Plaintiffs' allegations in the Lawsuit and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Lawsuit. Nonetheless, without admitting or conceding liability, wrongdoing, or damages, Defendants have agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Lawsuit.

E. The purpose of this Agreement is to conclusively and finally resolve: (i) any and all of Plaintiffs' claims against Defendants from the beginning of time through the execution of this Agreement; and (ii) FLSA Opt-In Plaintiffs' claims against Defendants that were raised in the Lawsuit or arise out of the facts alleged as part of the Lawsuit and occurred during the Class Period.

F. The Parties agree and understand that this Agreement is part of a global settlement, and that this Agreement is neither valid nor enforceable unless the Court enters a written Order approving this Agreement. If the Court does not finally approve this Agreement, then this Agreement is null and void and the parties revert to *status quo ante* as more fully described in Paragraph 7 below.

2. **Opportunity to Negotiate, Consider, and Consult with Counsel**

   A. The terms of this Agreement are the product of lengthy, arms-length negotiations between the Parties. The negotiations were conducted using a formula that the parties agreed was a fair and reasonable compromise of the Plaintiffs' and FLSA Opt-In Plaintiffs' claims.

   B. The Parties agree that the consideration given to support the obligations under this Agreement is adequate and sufficient in all respects and that the Parties have not received or been made any promise, inducement, or concession not set forth in this Agreement in support of the obligations imposed.

   C. The Parties acknowledge that they have been represented by counsel throughout the negotiation of this Agreement and the Lawsuit.

3. **Definitions**

   The terms set forth herein shall have the meanings ascribed to them below:

   "**FLSA Opt-In Plaintiffs**" means the current and former non-exempt employees who served as delivery drivers employed from November 27, 2015 to July 26, 2020 at the Wright Bros. Pizza stores, and who returned a Consent to Join Form on or before July 26, 2020, including Plaintiffs Scott and Rhonda Honaker. These individuals are collectively referred to as "the Class" and individually as "FLSA Opt-In Plaintiffs."

"**Child-Support Lien Opt-ins**" means FLSA Opt-In Plaintiffs who are in default of, or have any arrearages under, a Court support order in the State of Ohio, as identified by Defendant through the Child Support Lien Network's Ohio Insurance Intercept Database.

"**Settlement Period**" means the period from November 27, 2015 to July 26, 2020.

"**Claims Administrator**" or "**Administrator**" means CAC Services Group, LLC.

"**Complaint(s)**" means the Complaint on file in the Lawsuit, Case No. 2:18-cv-1528, Doc. 1.

"**Consent to Join Form**" means a consent form returned by one of Defendants' employees in response to the parties' stipulated Notice of Opportunity to Join Unpaid Wage Lawsuit. Case No. 2:18-cv-1528, Docs. 22-23.

"**Defendants**" means Wright Bros. Pizza, Inc. and Thomas Wright.

"**Defendants' Counsel**" means Dinsmore & Shohl, LLP.

"**Lawsuit**" means *Honaker v. Wright Bros. Pizza, Inc.* (the "Lawsuit"), currently pending in the United States District Court, Southern District of Ohio, Eastern Division (the "Court"), case number 1:18-cv-1528.

"**Named Plaintiffs**" means Scott Honaker and Rhonda Honaker, and includes any and all of their representatives, heirs, administrators, executors, beneficiaries, agents, attorneys, and assigns, as applicable and without limitation.

"**Parties**" means the Named Plaintiffs, the FLSA Opt-In Plaintiffs, and Defendants.

"**Plaintiffs' Counsel**" means Biller & Kimble, LLC.

"Total Settlement Amount" means $150,000.

"**Qualified Settlement Fund**" or "**QSF**" means the account established by the Claims Administrator into which Defendants will deposit the Total Settlement Amount necessary to pay: (1) the Claims Administrator's fees and costs (up to $2,500, any additional amounts to be paid by Defendants); (2) Court-approved attorneys' fees and costs for Plaintiffs' Counsel; (3) Court-approved Service Awards to Named Plaintiffs as specified herein; and (4) the claims of all FLSA Opt-In Plaintiffs, which, together, shall not exceed the aggregate Total Settlement Amount of $150,000. The QSF will be controlled by the Claims Administrator subject to the terms of this Agreement, the Court's Orders, applicable law and any customary agreement entered into by the Parties through their counsel.

"**Released Parties**" means Wright Bros. Pizza, Inc. and Thomas Wright, and any related entities, along with all respective owners, members, stockholders, franchisors, predecessors, successors, assigns, agents, directors, officers, employees, representatives,

attorneys, parent companies, divisions, insurers, subsidiaries, affiliates, insurance carriers and all persons acting by, through, under or in concert with them.

"**Settlement**" means the settlement of the Lawsuit pursuant to the terms of this Agreement.

"**Wright Bros. Pizza stores**" includes the following locations:

1. Store #2204 – 1114 N. Memorial Dr., Lancaster, Ohio 43130;

2. Store #2178 – 6430 Winchester, Blvd., Canal Winchester, Ohio 43110;

3. Store # 2315 – 1027 Hill Road North, Pickerington, Ohio 43147;

4. Store #2227 – 680 Corylus Dr. SW, Pataskala, Ohio 43062; and

5. Store #2332 – 840 Delaware Ave., Marysville, Ohio 43040.

**4. Settlement Terms**

A. To settle the Action, and in consideration of the release of claims and dismissal of the Action, Defendants agree to pay the Total Settlement Amount of $150,000.00 ("Total Settlement Amount"), inclusive of all items described in definition of Qualified Settlement Fund described in Paragraph 3 (above). The Total Settlement Fund accounts for all payments and claims raised in the Lawsuit by Plaintiff and FLSA Opt-In Plaintiffs up to and including the end of the Settlement Period.

B. After deducting Court-approved attorneys' fees, costs, and incentive awards, each FLSA Opt-In Plaintiff's individual award amount will be three times the following: $.55 per mile driven during the Settlement Period minus actual reimbursements paid. To the extent these calculations exceed the Settlement Amount after deducting attorneys' fees, costs, and incentive awards, each FLSA Opt-In Plaintiffs' share of the Settlement Amount will be reduced on a pro rata basis. In no event shall Defendants payment obligations, inclusive of all payments described in the definition of Qualified Settlement Agreement described in Paragraph 3 (above), exceed the Total Settlement Amount of $150,000.00

C. Retention and Payment of Claims Administrator. The Parties have agreed to retain CAC Services Group, LLC as Claims Administrator to establish a Qualified Settlement Fund (the "QSF") and disburse the settlement payments described herein. The Claims Administrator will be responsible for locating FLSA Opt-In Plaintiffs through commercially reasonable efforts, as detailed in Section 6 below. The Claims Administrator will also be responsible for responding to FLSA Opt-In Plaintiff inquiries; reporting on the state of the settlement to the Parties; distributing the Service Award; calculating the FLSA Opt-In Plaintiffs individual settlement payments in accordance with the Settlement and the Court's Approval Order; distributing Settlement Checks to individual FLSA Opt-In Plaintiffs; preparing and filing all required tax documentation; providing counsel with any

     information related to the administration of the Settlement upon request; and performing such other duties as the Parties may jointly direct or as are specified herein.

D. Defendants agree not to object to an award of attorneys' fees of one-third of the Total Settlement Amount, to a reimbursement of $2,590.00 in costs for some or all legal expenses, and to an allocation of $5,000 for each Named Plaintiff representing a service award.

E. This Agreement is not contingent on the Court approving the amount of attorneys' fees and costs noted above. In the event that the Court does not approve the above amount of attorneys' fees and costs or reduces that amount, the finding will not be a basis for rendering any unrelated section of the Agreement null, void, or unenforceable. Plaintiffs' Counsel retain their right to appeal any decision by the Court regarding the Attorneys' fees and costs, at the Named Plaintiffs and/or Plaintiffs' Counsel's sole cost (inclusive of attorney's fees with respect to such appeal), and such appeal will not be deemed an appeal of this Agreement or the Settlement. The merits and substance of the Settlement will be approved by the Court separately and independently of the Court's decisions regarding Plaintiffs' Counsel's application for attorneys' fees and costs.

F. Plaintiff Scott Honaker will receive $5,000 as a service award. Plaintiff Rhonda Honaker will also receive $5,000 as a separate service award, for which the Defendants shall issue the Named Plaintiffs IRS Forms 1099. Plaintiffs' service awards will be deducted, from the Total Settlement Fund prior to determination of the determination of the pro rata award to the FLSA Opt-In Plaintiffs. For the sake of clarity, in addition to their service awards, Named Plaintiffs shall also be entitled to their pro-rata share of the settlement fund after deductions for attorneys' fees and costs, administration fees, and service awards. Named Plaintiff's service awards are subject to Court approval.

G. Each settlement check issued to the Named Plaintiffs and FLSA Opt-In Plaintiffs, exclusive of the Service Awards, will be treated as 50% expense reimbursement for tax purposes. The remaining 50% of each check will be considered liquidated damages and will not be considered wages or subject to withholding. A Form 1099 will issue to FLSA Opt-In Plaintiffs for monies paid as liquidated damages.

H. The Parties are responsible for ensuring their own proper tax treatment of the payments. In addition to the Settlement Fund, Defendants will be responsible for paying their portion of employer taxes, if any, arising from this Agreement, though the Parties agree that amounts paid to the FLSA Opt-In Plaintiffs are for expense reimbursement and liquidated damages and, as such, should not be considered taxable as wages under FICA, FUTA, unemployment insurance or for the purpose of any other payroll tax. The Parties also agree and understand that any payments under this Agreement are not intended to, and will not form the basis for, nor shall they be considered wages for calculating, or re-calculating, additional contributions to, or benefits under, any benefit or compensation plans maintained by the Defendants for the benefit of their employees and their employees' beneficiaries. FLSA Opt-In Plaintiffs will not be responsible for the Company's portion of individual payroll taxes, if any, that are normally withheld from their wages. Those

5

amounts, if any, will be withheld by the Administrator or Defendants and remitted to the proper taxing authorities. With respect to the payments made to the Named Plaintiffs or FLSA Opt-In Plaintiffs in accordance with this Agreement, Named Plaintiffs or FLSA Opt-In Plaintiffs agree to defend, indemnify and hold Defendants harmless for any tax liability attributable to the Named Plaintiffs or FLSA Opt-in Plaintiffs, together with any interest or penalties assessed thereon, which Defendants may be assessed by the United States Internal Revenue Service, or any state or local department of taxation, arising from any payments made pursuant to this Agreement, with the exception of the employer's portion of any applicable withholding, for which Defendants shall be solely responsible.

I. The Court shall retain continuing jurisdiction over the Settlement. In the event that Defendants fail to make one or more payments described in this Settlement Agreement, Plaintiff, Class Counsel, and/or FLSA Opt-In Plaintiffs shall notify Defendants of the failure to pay, and Defendants will have 14 days to cure to failure to pay. If Defendants fail to cure the issue and/or pay, Plaintiffs may petition the Court to enforce this Agreement, and shall be entitled to an entry of judgment against Defendants jointly and severally for the amount of damages suffered as a result of the breach of the Settlement Agreement plus applicable interest and reasonable attorneys' fees and costs relating to enforcement. For the sake of clarity however, Defendants shall not be held responsible if the Administrator fails to timely make payments on behalf of Defendants. Further, if either Party believes the other has breached this Agreement in any way other than with respect to a failure to pay, the Party shall notify the other Party of the alleged breach, and allow 14 days to cure the issue. If the issue is not cured within 14 days, either Party may seek Court intervention.

J. All payments described in this Paragraph 4 are subject to Court approval of the Settlement.

K. With respect to Child-Support Lien Opt-ins, Defendant is responsible for monitoring the Child Support Lien Network's Ohio Insurance Intercept Database to identify all FLSA Opt-In Plaintiffs who are in default, or have any arrearages, under a support order in the State of Ohio. Defendant shall report the names of all Child-Support Lien Opt-ins to the Settlement Administrator within twenty-one (21) days after Plaintiffs file their Unopposed Motion for Approval of the Settlement. Defendants will also provide the Settlement Administrator an updated copy of all Child-Support Lien Opt-ins within the same month as the distribution of settlement checks.

5. **Release**

A. Any FLSA Opt-In Plaintiff releases all state and federal wage and hour claims accrued from November 27, 2015 until July 26, 2020, arising out of the facts asserted in the Lawsuit that were made against Defendants or the Released Parties, including, claims relating to the under-reimbursement of expenses, "dual jobs/80-20" claims, tip credit notice claims, wage notification, posting, deduction, withholdings, recordkeeping and paycheck claims, and any related common law and equitable (e.g., breach of contract, unjust enrichment, etc.) including any related claims for liquidated damages, penalties, attorneys' fees and costs (including claims administration fees), and interest, that could be pursued under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, the wage and hour laws of Ohio, the

6

      Ohio Minimum Fair Wages Standards, R.C. 4111.01, et seq., the Ohio Prompt Pay Statute, R.C. 4113.15, and related provisions of the Ohio Constitution.

B. The back of each settlement check issued to the FLSA Opt-In Plaintiffs will contain the following release:

> By cashing or negotiating this check, I agree to join the lawsuit *Honaker v. Wright Bros. Pizza, Inc.,* No. 1:18-cv-1528 (S.D. Ohio) (the "Lawsuit") and agree to be bound to the Settlement and Release Agreement in the Lawsuit. I irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge any claim I may or might have against Defendants or any of the Released Parties (as defined by the Settlement and Release Agreement) for the wage and hour claims arising out of the facts asserted in the Lawsuit from November 27, 2015 until July 26, 2020, including, claims relating to the under-reimbursement of expenses, "dual jobs/80-20" claims, tip credit notice claims, wage notification, posting, deduction, withholdings, recordkeeping and paycheck claims, and any related common law and equitable (e.g., breach of contract, unjust enrichment, etc.) including any related claims for liquidated damages, penalties, attorneys' fees and costs (including claims administration fees), and interest, that could be pursued under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., the wage and hour laws of Ohio, the Ohio Minimum Fair Wages Standards, R.C. 4111.01, et seq., the Ohio Prompt Pay Statute, R.C. 4113.15, R.C. 2307.60, and related provisions of the Ohio Constitution.

C. As part of this Agreement and in consideration for the $5,000 service payments, the Named Plaintiffs agree to provide the Defendants a General Release and Waiver of any and all claims from the beginning of time until the date of the General Release within three (3) days of the Court's Approval of the Unopposed Motion to Approve Settlement. A copy of the General Release and Waiver is attached to this document as Exhibit 1.

**6.     Administration Procedure and Timeline**

The Parties agree to the following timeline for the completion of the settlement process and dismissal of the Action:

A. <u>Data Production</u>: Within twenty-one (21) days of Plaintiffs filing their unopposed Motion for Settlement Approval, Defendants will provide up-to-date records reflecting the number of miles driven by each FLSA Opt-In Plaintiff and the amount of reimbursements paid to each FLSA Opt-In Plaintiff during the Settlement Period. Also within twenty-one (21) days of Plaintiffs filing their unopposed Motion for Settlement Approval, Defendants will transmit to Class Counsel and the Administrator, as available, the last known and available mailing addresses, email addresses, and phone numbers, and the existence of child-care support liens and recipients for the FLSA Opt-In Plaintiffs.

B. <u>Settlement Approval:</u> Plaintiffs will draft and file an unopposed Motion for Settlement Approval as soon as practicable, requesting a hearing date for the Court to consider whether to grant approval. Plaintiffs agree that an unopposed Motion will be provided to Defendants within five (5) business days after the execution of this Agreement by Plaintiff so that Defendants can review and comment on the content of the Motion, and Plaintiff will not unreasonably refuse to incorporate any of Defendants' recommended changes. Plaintiffs will file the unopposed Motion with the Court within ten (10) business days of the execution of this Agreement.

C. <u>Final Settlement Calculations</u>: Within seven (7) days of Court approval, Plaintiffs' Counsel will subtract the attorneys' fees, costs, administrative costs, and service awards awarded by the Court, then will calculate each FLSA Opt-In Plaintiff's settlement award based on each FLSA Opt-In Plaintiff's pro rata share of the damages calculated in Paragraph 4(B) above. Plaintiffs' Counsel will share these calculations with Defendants' Counsel and Defendants' Counsel shall have 3 business days to raise any objections to the calculations.

D. <u>QSF Funding:</u> Within 7 days of the Court's approval of the settlement, Defendants will transmit to the Administrator the Total Settlement Amount of $150,000.00.

E. <u>Payment</u>:

   i.  The Claims Administrator will issue checks to the Named Plaintiff's Service Payments, the FLSA Opt-In Plaintiffs (with the exception of Child-Support Lien Opt-ins, who shall be paid in accordance with the terms set forth below) and Class Counsel within twenty-eight (28) days after the Court's approval of the Settlement. Each FLSA Opt-In Plaintiff will receive his or her full settlement award, Class Counsel will receive the full amount of the attorneys' fee award approved by the Court, and Named Plaintiff will receive the amount of Service Awards approved by the Court.

   ii. Notwithstanding Subsection (i) above, all settlement awards greater than $150.00 allocated to Child-Support Lien Opt-ins shall be retained in the Qualified Settlement Fund pending an administrative order from the governing child support enforcement agency ("CSEA") relating to the transmittal and/or release of such funds. The Claims Administrator shall issue checks to the appropriate recipient(s) in strict adherence with the CSEA's administrative order(s), on a case-by-case basis following the approval of the settlement by the Court.

F. <u>Stipulation of Dismissal with Prejudice:</u> Within 30 days of the Administrator making the above payments, the Parties will submit a stipulation of dismissal with prejudice as to the Named Plaintiffs and FLSA Opt-In Plaintiffs, which Stipulation shall provide that the Court shall retain continuing jurisdiction over the Settlement, a form of which is attached as Exhibit 2.

G. <u>Undeliverable FLSA Opt-In Plaintiff Checks:</u> If any checks are returned to the Administrator as undeliverable with a forwarding address, the Administrator will forward

8

the payment to the forwarding address. If any checks are returned as undeliverable without a forwarding address, the Administrator will attempt to contact the FLSA Opt-In Plaintiff to obtain an updated address. If the Administrator is able to obtain an updated address, the Administrator will re-issue the check and forward the payment to the updated address. If, after these measures, the checks are returned to the Administrator or not endorsed/cashed within six (6) months of the most recent mailing of the checks, the Administrator will provide an accounting to all parties and return the unused funds to the Defendants as instructed by the Defendants.

7. **Defendants' Option to Revoke and Effect of Failure to Grant Approval:**

    A. In the event that the Court does not approve the Agreement, with the exception of the Attorneys Fees and Costs, then the Agreement will be rendered null and void. The Parties will make a good faith effort to resolve the matter. Absent a negotiated resolution, the Parties will revert to their respective positions prior to the Agreement being reached.

8. **Other Terms**

    A. By entering into this Agreement, Defendants in no way admit to any violation of law or any liability whatsoever to Plaintiffs or to the FLSA Opt-In Plaintiffs, all such liability being expressly denied. Defendants deny and continue to deny the allegations in the Lawsuit and deny and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Lawsuit and are entering into this lawsuit for the sole purpose of avoiding additional time and expense associated with litigating this matter through final resolution.

    B. Settlement of the Lawsuit and all acts performed or documents executed in furtherance of this Agreement or the settlement embodied herein: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants, or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; (b) are not, and shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding; and (c) are not, and shall not be deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for collective action treatment other than for purposes of administering this Agreement.

    C. No modifications or amendments to any of this Agreement's terms, conditions, or provisions may be made except by written agreement executed by all Parties. Any material changes will be subject to approval by the Court presiding over the Lawsuit.

    D. This Agreement including any exhibits constitutes the entire agreement between the Parties, and all prior negotiations and understandings between the Parties shall be deemed merged into this Agreement.

9

E. This Agreement is written jointly by the Parties and may not be construed against any one party as the drafter. If any provision(s) of this Agreement are held to be illegal, invalid, or unenforceable under present or future laws, any such provision(s) will be curtailed and limited only to the extent necessary to bring it within the requirements of the law. In that event, the remainder of this Agreement will thereafter be construed and enforced as if the illegal, invalid, or unenforceable provision(s) had never comprised a part of the Agreement. The remaining provision(s) of the Agreement will continue in full force and effect and will not be affected by any illegal, invalid, or unenforceable provision(s) or by their severance.

F. The waiver by any party hereto of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach of any party, nor will any waiver operate or be construed as a rescission of this Agreement. No breach of this Agreement will permit the non-breaching party to repudiate the Agreement or refuse or fail to perform any obligations required hereunder.

G. Ohio law governs this Agreement's validity, construction, and enforceability. This Court shall retain exclusive jurisdiction to enforce the terms of this Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing, interpreting, and enforcing the terms of the Agreement.

H. This Agreement may be executed by facsimile or electronically and in multiple counterparts, each of which will be deemed an original, but all of which together constitute one instrument.

I. The Parties agree to promptly take all actions reasonably necessary to effectuate this Agreement, including but not limited to motions to the Court for approval of the Agreement and continuance of any intervening deadlines contrary to those contemplated by the Agreement.

J. If any deadline under the Agreement falls on a Saturday, Sunday, or legal holiday, the Parties agree that the deadline will be deemed to be the next business day.

The undersigned hereby acknowledge and agree to all of the terms, conditions, and provisions of the above settlement agreement.

*Scott Honaker*  
—————————————————  
Scott Honaker,  
Individually and as Representative for Plaintiffs

October 26, 2020  
——————————  
Date

*Rhonda Honaker*  
—————————————————  
Rhonda Honaker,  
Individually and as Representative for Plaintiffs

October 26, 2020  
——————————  
Date

_____  10/27/2020
Thomas Wright,                   Date
On behalf of Wright Bros. Pizza, Inc.

_____  10/27/2020
Thomas Wright, on behalf of himself   Date

11

**SETTLEMENT AGREEMENT AND GENERAL RELEASE**

This Settlement Agreement and General Release ("Agreement") is entered into between Tom Wright and Wright Bros. Pizza, Inc. (collectively "Wright Bros. Pizza") and Scott Honaker ("Honaker").

WHEREAS, Honaker previously was employed by Wright Bros. Pizza; and

WHEREAS, Honaker filed Case No. 2:18-cv-1528, styled *Scott Honaker, et al., v. Wright Bros. Pizza, Inc., et al.* in the United States District Court for the Southern District of Ohio (hereinafter the "Lawsuit") on November 27, 2018; and

WHEREAS, Wright Bros. Pizza has denied and continues to deny any and all CLAIMS contained in the above-referenced matter; and

WHEREAS, the parties successfully resolved all CLAIMS contained in the Lawsuit, and such resolution called for Honaker to release any and all CLAIMS against Wright Bros. Pizza through the execution of a separate release and waiver of claims; and

WHEREAS, this Agreement is entered into in connection with the Class Settlement Agreement and Release executed by Honaker and Wright Bros. Pizza on October 26, 2020 ("Class Settlement Agreement"), which resolves all CLAIMS contained in the Lawsuit on behalf of himself and others similarly situated; and

WHEREAS, under the Class Settlement Agreement, Wright Bros. Pizza agreed to provide Honaker a Service Award of $5,000 as payment for his involvement in commencing and litigating the claims asserted in the Lawsuit and resolved in the Class Settlement Agreement and for his involvement in settlement negotiations for the benefit of all putative collective members of the Lawsuit; and

WHEREAS, Honaker and Wright Bros. Pizza now desire to reach a complete and final settlement of any and all differences that exist or that may exist between them, including but in no way limited to, the differences embodied in the Lawsuit; and

NOW, THEREFORE, in consideration of the mutual promises and valuable consideration described below, the parties agree as follows:

1. As used in this Settlement Agreement and General Release, these words shall have the following meanings:

    a. RELEASEES means Tom Wright and Wright Bros. Pizza, Inc., and, as applicable, their current and former owners, predecessors, successors, assigns, agents, directors, officers, employees, contractors, representatives, attorneys, and parents, divisions, insurers, reinsurers, subsidiaries, and affiliates (and agents, directors, officers, employees, representatives, and

                attorneys of such divisions, subsidiaries, and affiliates), and all persons or entities acting by, through, under, or in concert with any of them.

      b.    CLAIM or CLAIMS means any and all complaints, lawsuits, claims (including without limitation, the allegations contained in the Lawsuit), liabilities, obligations, promises, agreements, grievances, controversies, damages, actions, causes of action, rights, demands, losses, debts, and expenses (including costs and attorney's fees actually incurred) related to Honaker's employment with RELEASEES or separation therefrom.

    2.    This Agreement is entered into in connection with the settlement of the Lawsuit. Accordingly, this Agreement's validity is conditioned upon the United States District Court for the Southern District of Ohio's (the "Court") approval of settlement in the Lawsuit. As such, the effective date of this agreement (the "Effective Date") shall be determined as of the date that the Court issues an order approving the settlement of the Lawsuit. In the event that this Court does not approve settlement or the Service Awards of $5,000 in the Lawsuit, this Agreement shall be deemed null and void in its entirety.

    3.    In accordance with the terms of the Class Settlement Agreement, Wright Bros. Pizza shall pay Honaker a Service Award of $5,000 as payment for his involvement in commencing and litigating the claims asserted in the Lawsuit and resolved in the Class Settlement Agreement and for his involvement in settlement negotiations for the benefit of all putative collective members of the Lawsuit, for which RELEASEES shall issue Honaker an IRS Form 1099.

    4.    Each party shall bear all of the fees, costs and expenses incurred by him or its own attorneys or advisors in connection with the action or this Agreement and the settlement it represents.

    5.    In exchange for his receipt of the Service Award, and as a material inducement to RELEASEES to enter into this Agreement, as against RELEASEES, Honaker does hereby irrevocably and unconditionally release, discharge, compromise and settle any and all CLAIMS, demands, rights of action or obligation (including all attorneys' fees and costs actually incurred), matured or unmatured, of whatever nature and whether or not presently known that exist as of the execution date of this Agreement, including any CLAIMS made in the Lawsuit, and any other CLAIMS arising out of or relating to Honaker's employment with any of the RELEASEES and/or his separation therefrom, under any federal, state or local law, common law, or statute. This Agreement does not restrict Honaker from filing a charge with the U.S. Equal Employment Opportunity Commission or comparable state agency, provided, however, Honaker waives the right to recover any monetary damages with respect to any such charge or any CLAIM or suit brought by or through any local, state, or federal department, agency, or court. Honaker does not waive or release any future CLAIMS that arise solely and completely after Honaker executes this Agreement. Honaker also agrees that Honaker has not assigned or transferred any CLAIMS to another person or entity. This Agreement does not release Honaker's right to any vested right or benefits under any qualified savings, pension, or retirement plan.

2



Honaker's Initials _____

6. Honaker acknowledges and agrees that this Agreement is a compromise of disputed CLAIMS, and any actions taken in connection with it do not constitute, and should not be understood as constituting, an acknowledgment, evidence, or an admission of any liability or violation of any law or statute, the common law, or any agreement which exists or which allegedly may exist by and between Honaker and Wright Bros. Pizza. Wright Bros. Pizza denies and disclaims any liability to Honaker and by entering into this Agreement intends merely to avoid continued litigation.

9. Honaker agrees not to make any statements or remarks which are disparaging toward RELEASEES.

10. This Agreement is binding upon Honaker and his heirs, administrators, representatives, executors, and assigns and shall inure to the benefit of RELEASEE(S) and to its heirs, administrators, representatives, executors, successors, and assigns.

11. Honaker hereby warrants and represents that he is not, nor has he ever been, enrolled in Medicare Part A, Part B, or Part C. Further, Honaker warrants and represents that he has never applied for Social Security Disability benefits nor is he appealing or re-filing for Social Security Disability benefits.

Based upon a review of the relevant facts and circumstances, Honaker has advised and warranted to RELEASEES that Medicare has not paid any of Honaker's medical expenses, that Honaker has not been and is not now eligible for Medicare benefits, and that Honaker has no plans to apply for SSDI or Medicare benefits within thirty (30) months of this Agreement. It is not anticipated or foreseeable that Honaker will become eligible for Medicare in the near future. Therefore, no funds are being set aside for Honaker's future Medicare-covered treatment.

Honaker agrees to hold harmless, indemnify, and defend all RELEASEE(S), and their attorneys from any claim or cause of action related to Medicare or Medicaid benefits received by Honaker, including but not limited to, an action by the Centers for Medicare & Medicaid Services ("CMS") to recover or recoup Medicare benefits or loss of Medicare benefits, including past, present, and future and/or conditional payments, regardless of whether the claim or cause of action has merit. Honaker shall be responsible for and hold all RELEASEE(S) harmless from any claim for conditional payments made by Medicare, including past, present and future. This indemnification obligation includes all damages and costs incurred by RELEASEE(S), and/or their attorneys and/or insurer(s), including but not limited to attorneys' fees incurred by or on behalf of RELEASEE(S), and/or their attorneys and/or insurer(s), fines and penalties, multipliers, costs, interest, expenses and judgments.

In consideration of the payment set forth in the Agreement, Honaker waives, releases, and forever discharges RELEASEE(S) from any obligations for any claim, known or unknown, arising out of the failure of and RELEASEE(S) to provide for a primary payment or appropriate reimbursement pursuant to the Medicare Secondary Payer (MSP) Act, 42 U.S.C. §1395y(b)(3)(A).

3


Honaker's Initials _____

12. This Agreement sets forth the entire agreement by and between Honaker and Wright Bros. Pizza and supersedes any and all prior agreements and understandings, whether written or oral, between them except for the Class Settlement Agreement. This Agreement shall not be modified except by written agreement duly executed by or on behalf of each of the parties hereto. This Agreement shall be governed by and construed in accordance with the law of the State of Ohio. If any part of this Agreement shall be deemed invalid or unenforceable, all remaining parts shall remain binding and in full force and effect.

13. The failure of Honaker or Wright Bros. Pizza to insist upon strict adherence to any term of this Agreement on any occasion shall not be considered a waiver thereof or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of this Agreement.

14. Honaker acknowledges that he is fully able and competent to enter into this Agreement, that he has read this Agreement in its entirety, that he had an opportunity to review it with his attorney, and that his agreement to all of its provisions is made freely, voluntarily, and with full and complete knowledge and understanding of its contents. Honaker also acknowledges and agrees that, in signing this Agreement, he has not relied upon any representations made by Wright Bros. Pizza with regard to the subject matter, basis, or tax consequences — including the character or treatment of the settlement payment hereunder, or effect of this Agreement or otherwise, other than the obligations of the parties set forth in this Agreement.

*Scott Honaker*

Scott Honaker

Date: October 26, 2020

Wright Bros. Pizza

By _[signature]_

Its PRESIDENT

Date: OCT. 27, 2020

4

Honaker's Initials _SH_

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement") is entered into between Tom Wright and Wright Bros. Pizza, Inc. (collectively "Wright Bros. Pizza") and Rhonda Honaker ("Honaker").

WHEREAS, Honaker previously was employed by Wright Bros. Pizza; and

WHEREAS, Honaker filed Case No. 2:18-cv-1528, styled *Scott Honaker, et al., v. Wright Bros. Pizza, Inc., et al.* in the United States District Court for the Southern District of Ohio (hereinafter the "Lawsuit") on November 27, 2018; and

WHEREAS, Wright Bros. Pizza has denied and continues to deny any and all CLAIMS contained in the above-referenced matter; and

WHEREAS, the parties successfully resolved all CLAIMS contained in the Lawsuit, and such resolution called for Honaker to release any and all CLAIMS against Wright Bros. Pizza through the execution of a separate release and waiver of claims; and

WHEREAS, this Agreement is entered into in connection with the Class Settlement Agreement and Release executed by Honaker and Wright Bros. Pizza on October 26, 2020 ("Class Settlement Agreement"), which resolves all CLAIMS contained in the Lawsuit on behalf of himself and others similarly situated; and

WHEREAS, under the Class Settlement Agreement, Wright Bros. Pizza agreed to provide Honaker a Service Award of $5,000 as payment for her involvement in commencing and litigating the claims asserted in the Lawsuit and resolved in the Class Settlement Agreement and for her involvement in settlement negotiations for the benefit of all putative collective members of the Lawsuit; and

WHEREAS, Honaker and Wright Bros. Pizza now desire to reach a complete and final settlement of any and all differences that exist or that may exist between them, including but in no way limited to, the differences embodied in the Lawsuit; and

NOW, THEREFORE, in consideration of the mutual promises and valuable consideration described below, the parties agree as follows:

1. As used in this Settlement Agreement and General Release, these words shall have the following meanings:

    a. RELEASEES means Tom Wright and Wright Bros. Pizza, Inc., and, as applicable, their current and former owners, predecessors, successors, assigns, agents, directors, officers, employees, contractors, representatives, attorneys, and parents, divisions, insurers, reinsurers, subsidiaries, and affiliates (and agents, directors, officers, employees, representatives, and

      attorneys of such divisions, subsidiaries, and affiliates), and all persons or entities acting by, through, under, or in concert with any of them.

   b. CLAIM or CLAIMS means any and all complaints, lawsuits, claims (including without limitation, the allegations contained in the Lawsuit), liabilities, obligations, promises, agreements, grievances, controversies, damages, actions, causes of action, rights, demands, losses, debts, and expenses (including costs and attorney's fees actually incurred) related to Honaker's employment with RELEASEES or separation therefrom.

  2. This Agreement is entered into in connection with the settlement of the Lawsuit. Accordingly, this Agreement's validity is conditioned upon the United States District Court for the Southern District of Ohio's (the "Court") approval of settlement in the Lawsuit.  As such, the effective date of this agreement (the "Effective Date") shall be determined as of the date that the Court issues an order approving the settlement of the Lawsuit. In the event that this Court does not approve settlement or the Service Award of $5,000 in the Lawsuit this Agreement shall be deemed null and void in its entirety.

  3. In accordance with the terms of the Class Settlement Agreement, Wright Bros. Pizza shall pay Honaker a Service Award of $5,000 as payment for her involvement in commencing and litigating the claims asserted in the Lawsuit and resolved in the Class Settlement Agreement and for her involvement in settlement negotiations for the benefit of all putative collective members of the Lawsuit, for which RELEASEES shall issue Honaker an IRS Form 1099.

  4. Each party shall bear all of the fees, costs and expenses incurred by her or its own attorneys or advisors in connection with the action or this Agreement and the settlement it represents.

  5. In exchange for her receipt of the Service Award, and as a material inducement to RELEASEES to enter into this Agreement, as against RELEASEES, Honaker does hereby irrevocably and unconditionally release, discharge, compromise and settle any and all CLAIMS, demands, rights of action or obligation (including all attorneys' fees and costs actually incurred), matured or unmatured, of whatever nature and whether or not presently known that exist as of the execution date of this Agreement, including any CLAIMS made in the Lawsuit, and any other CLAIMS arising out of or relating to Honaker's employment with any of the RELEASEES and/or her separation therefrom, under any federal, state or local law, common law, or statute.  This Agreement does not restrict Honaker from filing a charge with the U.S. Equal Employment Opportunity Commission or comparable state agency, provided, however, Honaker waives the right to recover any monetary damages with respect to any such charge or any CLAIM or suit brought by or through any local, state, or federal department, agency, or court.  Honaker does not waive or release any future CLAIMS that arise solely and completely after Honaker executes this Agreement.  Honaker also agrees that Honaker has not assigned or transferred any CLAIMS to another person or entity.  This Agreement does not release Honaker's right to any vested right or benefits under any qualified savings, pension, or retirement plan.


Honaker's Initials _____

6. Honaker acknowledges and agrees that this Agreement is a compromise of disputed CLAIMS, and any actions taken in connection with it do not constitute, and should not be understood as constituting, an acknowledgment, evidence, or an admission of any liability or violation of any law or statute, the common law, or any agreement which exists or which allegedly may exist by and between Honaker and Wright Bros. Pizza. Wright Bros. Pizza denies and disclaims any liability to Honaker and by entering into this Agreement intends merely to avoid continued litigation.

9. Honaker agrees not to make any statements or remarks which are disparaging toward RELEASEES.

10. This Agreement is binding upon Honaker and her heirs, administrators, representatives, executors, and assigns and shall inure to the benefit of RELEASEE(S) and to its heirs, administrators, representatives, executors, successors, and assigns.

11. Honaker warrants and represents that as of the date Honaker signs this Agreement, Honaker is not Medicare eligible, nor has Honaker ever been, enrolled in Medicare Part A, Part B, or Part C. Further, Honaker warrants and represents that Honaker has never applied for Social Security Disability benefits nor is Honaker appealing or re-filing for Social Security Disability benefits. The Parties have considered Medicare's interests in this settlement and have determined that an allocation for future Medicare covered expenses is not required pursuant to the policy and procedure established by CMS Memoranda to protect Medicare's interests, as required by the Medicare Secondary Payer Statute, and for reasons set forth below. Based upon reports of Honaker's current health care providers, there are no future Medicare covered treatments or prescriptions prescribed or reasonably expected related to the injuries in this claim; therefore, no allocation is required or being established. Honaker has warranted and represented to Wright Bros. Pizza that Medicare has not paid any of Honaker's medical expenses, that Honaker has not been and is not now eligible for Medicare benefits, and that Honaker has no plans to apply for SSDI or Medicare benefits within thirty months of executing this Settlement Agreement. Honaker understands and agrees that Wright Bros. Pizza is relying on the veracity and accuracy of Honaker's foregoing representations and that those representations form a material and non-waiveable term of this Settlement Agreement. Based on these representations it is not anticipated or foreseeable that Honaker will become eligible for Medicare in the near future. Therefore, no funds are being set aside for Honaker's future Medicare-covered treatment. Nonetheless, if the Centers for Medicare & Medicaid Services ("CMS") (this term includes any related agency representing Medicare's interests) determines that Medicare has an interest in the payment to Honaker under this settlement, Honaker agrees to indemnify, defend and hold RELEASEES harmless from any action by CMS relating to medical expenses of Honaker. Wright Bros. Pizza agrees to reasonably cooperate with Wright Bros. Pizza upon request with respect to any claim that the CMS may make and for which Honaker is required to indemnify Wright Bros. Pizza under this paragraph. Further, Honaker agrees to waive any and all future actions against RELEASEES for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A). Honaker understands this settlement may impact, limit or preclude Honaker's right or ability to receive future Medicare benefits arising out of the injuries alleged in this lawsuit, and nevertheless wishes to proceed with the settlement.

3



Honaker's Initials _____

12. This Agreement sets forth the entire agreement by and between Honaker and Wright Bros. Pizza and supersedes any and all prior agreements and understandings, whether written or oral, between them except for the Class Settlement Agreement. This Agreement shall not be modified except by written agreement duly executed by or on behalf of each of the parties hereto. This Agreement shall be governed by and construed in accordance with the law of the State of Ohio. If any part of this Agreement shall be deemed invalid or unenforceable, all remaining parts shall remain binding and in full force and effect.

13. The failure of Honaker or Wright Bros. Pizza to insist upon strict adherence to any term of this Agreement on any occasion shall not be considered a waiver thereof or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of this Agreement.

14. Honaker acknowledges that she is fully able and competent to enter into this Agreement, that she has read this Agreement in its entirety, that she had an opportunity to review it with her attorney, and that her agreement to all of its provisions is made freely, voluntarily, and with full and complete knowledge and understanding of its contents. Honaker also acknowledges and agrees that, in signing this Agreement, she has not relied upon any representations made by Wright Bros. Pizza with regard to the subject matter, basis, or tax consequences — including the character or treatment of the settlement payment hereunder, or effect of this Agreement or otherwise, other than the obligations of the parties set forth in this Agreement.

*Rhonda Honaker*
_____
Rhonda Honaker
Date: October 26, 2020

Wright Bros. Pizza
By _____
Its PRESIDENT
Date: OCT 27, 2020

4

Honaker's Initials _RH_