IN THE UNITED STATES DISCTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | : | |
|---|---|---|
| **SCOTT HONAKER**, *et al.*, | : | |
| | : | **Case No. 2:18-cv-1528** |
| Plaintiffs, | : | |
| | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| v. | : | |
| | : | **Chief Magistrate Judge Deavers** |
| **WRIGHT BROS. PIZZA, INC.**, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## FINAL APPROVAL ORDER

This matter is before the Court on Plaintiffs' unopposed Motion for Settlement Approval. (ECF No. 44). For the following reasons, the Court **GRANTS with modifications** the Motion for Settlement Approval and the case is **DISMISSED WITHOUT PREJUDICE**. The parties are directed by the Court to file a Dismissal Order dismissing this case with prejudice not later than thirty (30) days after the entry of this Order.

This matter is now terminated by settlement and shall be considered, pursuant to Fed. R. Civ. P. 41, dismissed without prejudice as to all claims, until the parties file the above-referenced Dismissal Order dismissing this matter with prejudice, unless the case is reopened for good cause shown upon proper motion of one or more parties to this action. The Court will retain jurisdiction over the settlement agreements.

### I. BACKGROUND

This action for unpaid wages was brought pursuant to the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Fair Wage Standards Act O.R.C. Chapter 4111 ("OMFWSA"), and Ohio's "Prompt Pay Act," O.R.C. § 4113.15 by Plaintiffs Scott and Rhonda Honaker against their

1

former employers, Wright Bros. Pizza, Inc and its sole owner, Thomas Wright. (ECF No. 1). The Defendants operate approximately five Domino's Pizza franchise locations in Ohio. (*Id.* ¶ 2). Plaintiffs were formerly employed as delivery drivers by Defendants, delivering pizza and other items to customers. (*Id.* ¶ 47). When not completing deliveries, delivery drivers were obligated to perform other tasks, including constructing boxes, cleaning, food preparation, and other duties as necessary. (*Id.* ¶ 48). Delivery drivers were paid minimum wage minus a tip credit for hours worked while completing deliveries, and minimum wage (or slightly above) for hours worked at the restaurant. (*Id.* ¶¶ 49–50). Plaintiffs allege that the tip credit was improperly taken from their wages, which resulted in them being paid a lower wage rate than Defendants had informed them they would be paid. (*Id.* ¶¶ 73–77)

The Defendants also required their delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles that were used in the course of their employment as delivery drivers. (*Id.* ¶ 53). Delivery drivers also were responsible for job-related expenses, including automobile costs and depreciations, gas, automobile maintenance and parts, insurance coverage, financing charges, cell phone costs, GPS charges, and any other necessary equipment, for which they were not wholly reimbursed. (*Id.* ¶ 54). Delivery drivers received a per-delivery reimbursement payment, which amounted to less than the IRS standard business mileage rate for the miles driven while completing deliveries. (*Id.* ¶¶ 64–65). Plaintiffs alleged that the failure to reimburse automobile and other-job related expenses deprived them of the minimum wages guaranteed to them under federal and Ohio law. (*Id.* ¶ 67).

Plaintiffs brought this action on behalf of themselves and similarly situated current and former delivery drivers who elected to opt in, pursuant to Section 216(b) of the FLSA, and as a class action under Fed. R. Civ. P. Rule 23. (*Id.* ¶¶ 6–7). In November 2019, Plaintiffs moved this

Court for conditional collective action certification under the FLSA and for approval of a notice to be sent to similarly situated employees. (ECF Nos. 10, 22). Plaintiffs did not seek class certification under Rule 23. Defendants did not oppose the motion to send notice, and Defendants jointly requested conditional certification of a class of all delivery drivers employed by Defendants from November 27, 2015 to the present. (ECF No. 22). In January 2020, this Court granted conditional certification of the class. (ECF No. 23). Plaintiffs' counsel sent notice to the 346 putative class members, who had sixty days to opt into the collective action. (*Id.* at 7). When the notice period ended, the parties requested permission to search for updated addresses and re-send notices returned as undeliverable. (ECF No. 33). This Court approved that motion and a second opt-in period ended July 26, 2020. (ECF No. 35). By the end of the second notice period, 34 delivery drivers had opted into the suit. (ECF No. 44 at 4).

Under the proposed settlement, Defendants will pay $150,000.00 to resolve the claims of the opt-in Plaintiffs. (ECF No. 44 at 8). Plaintiffs allege that the opt-in Plaintiffs have suffered approximately $67,776.67 in unpaid wages on their under-reimbursement claim and $31,612.23 in unpaid wages on their tip credit claim, for a total of approximately $99,389.00 in unpaid wages. (*Id.* at 7). Each opt-in Plaintiff will receive their pro rata share of the settlement based on actual miles driven and actual reimbursements paid; each Plaintiff will receive an average settlement award of $2,570.88. (*Id.* at 8). The proposed settlement would fully resolve the opt-in Plaintiffs' claims for mileage under-reimbursement and tip credit claims against Defendants. The Court has reviewed Plaintiffs' unopposed Motion and Settlement Agreement and approves the proposed settlement for the following reasons.

## II. LAW & ANALYSIS

The Court shall approve an FLSA settlement if there exists a bona fide dispute that can be

resolved by a settlement agreement, the agreement was reached through an arms-length negotiation, and the agreement is fair, reasonable, and adequate. *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012) (citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381–82 (S.D. Ohio 2006)). In evaluating a settlement agreement, a court must "ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation." *Rotuna v. W. Customer Mgmt. Grp. LLC*, No. 4:09-cv-1608, 2010 WL 2490989, at *5 (N.D. Ohio June 15, 2020).

The settlement meets this standard for approval. First, the Court finds that the settlement is the result of a bona fide dispute. Defendants deny the material allegations of Plaintiffs' claims and any violation of the FLSA and state wage and hour laws. (ECF No. 16; ECF No. 44-1 at 2). There is no indication that the parties were "merely engaged in pretense and posturing." *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351 (6th Cir. 2009). As discussed below, the Court also finds that the settlement agreement was reached as the result of arms-length negotiation.

### A. Fairness, Reasonableness, and Adequacy of Settlement

To determine whether a settlement is "fair, reasonable, and adequate," the Court balances the following factors: "(1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement." *Vigna v. Emery Fed. Credit Union*, No. 1:15-CV-51, 2016 WL 7034237, at *3 (S.D. Ohio Dec. 2, 2016). The balance of these factors weighs in favor of approving the proposed settlement agreement.

### 1. Risk of Collusion

The Court finds that the negotiations were conducted at arm's length and there is no reason to believe the settlement involves collusion. While the parties did not engage in formal discovery, they exchanged information, including Defendants' data related to the number of miles driven and any reimbursements to the opt-in Plaintiffs. (ECF No. 44 at 12). The Plaintiffs submit that they engaged in extensive, arm's length negotiations prior to reaching a resolution, and Defendants do not object. (*Id.*; ECF No. 44-2 ¶ 8).

### 2. Complexity, Expense, and Likely Duration of Litigation

Given the fact-intensive nature of the wage and reimbursement dispute, Plaintiffs contend that this factor weighs in favor of settlement. (ECF No. 44 at 12). Plaintiffs note that cases involving delivery driver reimbursement, including the proper standard to apply, take "considerable time and money to adjudicate," and that substantial discovery would need to be completed. (*Id.*). The parties also would have needed to litigate the issue of whether Defendant Thomas Wright can qualify as an "employer" of the delivery drivers. As the district court found in *In re Telectronics*, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). Given the unresolved legal issues and the need for substantial discovery, this Court finds that settlement will resolve these barriers and that the complexity, expense, and duration of continued litigation weighs in favor of settlement.

### 3. Stage of Proceedings

Courts must assess the progression of litigation to ensure that Plaintiffs have adequate information to assess their case and the desirability of a settlement agreement. *See Kritzer*, 2012

WL 1945144, at *7. Plaintiffs filed their Complaint in November 2018. (ECF No. 1). While the parties have not engaged in significant discovery, the parties did engage information that allowed Plaintiffs to assess the strengths and weaknesses of their claims, including Defendants' data on the number of miles driven and any reimbursements to the opt-in Plaintiffs. (ECF No. 44 at 12; ECF No. 44-2 at 8). Plaintiffs' counsel also has litigated a number of cases involving pizza delivery drivers, which provided valuable insight into the data received from Defendants and the overall strength of these claims and the remaining complexities of the case. (*Id.*). Thus, while the parties have not engaged in formal discovery, this Court finds that the experience of Plaintiffs' counsel in this sphere of litigation and the exchange of documents allowed Plaintiffs to make an informed decision about the adequacy of the settlement agreement.

### 4. Likelihood of Success on the Merits

The plaintiffs' probability of success on the merits is the "most important factor" for a court to consider in approving an FLSA settlement. *See Kritzer*, 2012 WL 1945144, at *6. Where factual and legal complexities cut against a clear determination that plaintiffs will prevail on the merits, settlement will be desirable. *Id.* The Plaintiffs allege that they have suffered approximately $67,776.67 in unpaid wages, and that if a settlement were not reached, they would pursue FLSA liquidated damages, an additional two times unpaid wages under the Ohio Constitution, and Prompt Pay damages under Ohio law. (ECF No. 44 at 10–11). The Defendants also represented to Plaintiff that they had little to contribute to a settlement, and Plaintiffs' independent forensic accounting analysis of the Defendants' financial records corroborated these representations. (*Id.* at 11–12). Under the settlement, the opt-in Plaintiffs will recover approximately 221% of their maximum possible unpaid wages on their reimbursement claim, which is the primary claim in this litigation. (*Id.* at 11). This Court agrees with Plaintiffs that their likelihood of success on the merits

is outweighed by the benefits of the proposed settlement.

### 5. Judgment of Experienced Counsel

Plaintiffs' counsel, who regularly litigates FLSA claims on behalf of pizza delivery drivers, submit that the proposed settlement is fair, reasonable, and adequate. The Court gives great weight to the beliefs of experienced counsel. *See Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."). Accordingly, this factor weighs in favor of approval.

### 6. Reaction of Absent Class Members

This Court must consider any objections to the settlement raised by class members. All Plaintiffs who presently have filed consent motions to join the action are in favor of settling the case and no class members have objected. This factor also weighs in favor settlement approval.

### 7. Public Interest

As the district court noted in *Kritzer*, there is a "public interest favoring settlement . . . as the proposed settlement ends potentially long and protected litigation." 2012 WL 1945144, at *6 (citing *In re Broadwing*, 252 F.R.D. at 369). The public interest is served where a settlement "provides relief to the class members, avoids further litigation, and frees the Court's judicial resources." *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, at *3 (S.D. Ohio January 18, 2019). The Court finds this factor also weighs in favor of approving the proposed settlements.

## B. Attorneys' Fees

The Sixth Circuit has held that an award of attorneys' fees must be reasonable, meaning it must be "one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). There are two methods for

determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). The Sixth Circuit has approved both methods. *Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993). When using the percentage-of-the-fund method, courts in this Circuit generally approve of awards that are one-third of the total settlement. *See, e.g.*, *Rotuna v. W. Customer Mgmt. Grp., LLC*, 4:09CV1608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2010) (approving of attorney's fees in the amount of one-third of the settlement fund). The lodestar figure represents the number of hours spent multiplied by reasonable rates. *Reed*, 179 F.3d at 471. Although not mandatory, courts frequently cross-check counsel's request for percentage-of-the-fund awards against the lodestar. *Van Horn*, 436 F. App'x at 501. A district court has discretion to select which method is appropriate in light of the "unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Id.*

A district court also analyzes the following factors in determining whether the fee is reasonable: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Castillo v. Morales*, No. 2:12-cv-650, 2015 WL 13021899, at *6 (S.D. Ohio Dec. 22, 2015) (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)).

Plaintiffs seek approval of attorneys' fees of $50,000, which is one-third of the total settlement amount. (ECF No. 44 at 13). Plaintiffs' counsel undertook representation on a one-third contingency fee agreement and the notice sent to putative class members informed them of the

8

contingency agreement. (*Id.*). At present, Plaintiffs' counsel's lodestar is $36,850.50, and the requested attorney's fee award amounts to a lodestar multiplier of 1.35. (*Id.* at 16). Defendants do not oppose Plaintiffs' request for one-third of the settlement fund as attorneys' fees. (*Id.* at 13).

This Court finds that the lodestar approach is the appropriate method in this case, given the particular circumstances, *see In re Cardinal Health Ins. Sec. Litig.*, 528 F. Supp. 2d 752, 761 (S.D. Ohio 2007), and this Court's evaluation of the *Ramey* factors. Once the lodestar has been calculated, a court may adjust the lodestar amount as necessary to ensure the award is reasonable. In determining whether to adjust the lodestar amount, the court may consider the following twelve factors:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Reed*, 179 F.3d at 472. There exists a "strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

### 1. The Lodestar Amount

This Court will start by examining counsel's representation of the lodestar amount in this case. In a Declaration, Plaintiff's counsel notes that 112.60 hours total have been billed on this case for a cumulative total lodestar of $36,850.50. (ECF No. 44-2 at 5). Counsel has provided a list of the attorneys and staff on the matter, the hours expended by each, their years of experience, and their hourly rate. (*Id.*). The Defendants do not dispute the hourly rate of Plaintiffs' counsel or that the number of hours sought is unreasonable. The rates requested by Plaintiffs' counsel are customary and reasonable, and have been approved by this Court in prior litigation. *See*

*Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 WL 6310376, at *6 (S.D. Ohio Nov. 25, 2019). In *Brandenburg*, the Court found that Plaintiff's counsel had a high level of expertise in the "niche of 'pizza delivery driver litigation'" and that their hourly rates were reasonable in light of counsel's experience, skill, and areas and level of expertise. *Id.* Accordingly, this Court finds that the cumulative total lodestar of $36,850.50 is reasonable. As many of the *Reed* factors concerning adjustment of lodestar are subsumed by the *Ramey* reasonableness factors, this Court will now turn to its analysis of the *Ramey* factors to determine if an award of the lodestar amount is reasonable.

### 2. The *Ramey* Factors

The Court also analyzes the following factors in determining whether a fee award is reasonable: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Ramey*, 508 F.2d at 1196. In light of these factors, this Court finds that awarding Plaintiff's counsel their cumulative total lodestar of $36,850.50 is a reasonable fee award.

#### a. Value of Benefit to Plaintiff Class

The result obtained is typically regarded as the "single most important factor" in determining the reasonableness of fees. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Plaintiffs' counsel has achieved an average recovery of $2,500 for opt-in Plaintiffs, who are minimum wage workers. (ECF No. 44 at 15). Plaintiffs and the opt-in class recovered approximately 221% of their maximum possible unpaid wages on their reimbursement claim. (ECF No. 44 at 11). There were also no objections raised to the settlement. Opt-in plaintiffs are receiving a significant financial

10

benefit under the settlement agreement and this factor weighs in favor of awarding counsel their lodestar amount in this case.

### b. Societal Stake in Attorneys' Fees

Society has a stake in rewarding attorneys who achieve a result that individual class members were unlikely to obtain on their own. *See Kritzer*, 2012 WL 1945144, at *9. This is especially true in class actions, that allow claimants with smaller claims to pool claims and resources. *See Mullins*, 2019 WL 275711, at *4. There also exists a "public interest" in ensuring that attorneys who represent clients in class action litigation are adequately compensated, so that attorneys will continue to take on such cases in the future. *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011). Like *Mullins*, this collective action allowed low-wage workers to recover unpaid wages, many of whom would likely not have been willing or able to pursue their claims individuals, if they even knew they had a claim against Defendant. *See Mullins*, 2019 WL 275711, at *5. An award of Plaintiffs' counsel's lodestar, which reflects their reasonable rates and time spent, is adequate compensation for their work in this matter. Accordingly, this second factor weighs in favor of awarding counsel their lodestar amount in this case.

### c. Whether Services were Undertaken on Contingent Fee Basis

Plaintiffs' counsel undertook this representation on a contingency fee basis. (ECF No. 44 at 13). In doing so, counsel "undertook the risk of not being compensated" at all. *O'Bryant v. Pillars Protection Servs., LLC*, No. 2:19-cv-1354, 2020 WL 7486712, at *6 (S.D. Ohio Dec. 17, 2020) (quoting *Kritzer*, 2012 WL 1945144, at *9). While Plaintiff's counsel undertook representation on a one-third contingency fee arrangement with the original plaintiffs, and later the opt-in plaintiffs, the existence of such an arrangement is not dispositive to a court's fee analysis.

*Krause v. Rhodes*, 640 F.2d 214, 218 (6th Cir.), *cert denied*, 454 U.S. 836 (1981). A district judge has broad equity power to supervise the collection of attorney's fees under contingency fee contracts. *See U.S. ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1047 (6th Cir. 1994) (citing *Krause*, 640 F.3d at 218). The contingency fee arrangement here does not mandate that this Court award one-third of the common fund as attorney's fees. *See United Slate, Tile & Composition Roofers, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495 (6th Cir. 1984) ("The existence of a contingency contract may be considered by a district court as an element to be considered in determining the market value of an attorney's services, but the court is not bound in any sense by that agreement."). An award of the lodestar amount compensates Plaintiffs' counsel for their unpaid fees and the risk of taking this case on contingency.

### d.     Value of Services on Hourly Basis

As discussed previously, Plaintiffs' counsel has billed approximately $36,850.50 in the matter to date. (ECF No. 44 at 16). Plaintiffs' contend that the difference between the award they seek and the time billed, which would amount to a lodestar multiplier of 1.35, is reasonable because Plaintiffs' counsel will continue to work on this case after settlement approval and because their "thousands of hours of work on similar cases informed their representation of Plaintiffs here." (*Id.*). This Court notes that it already has found Plaintiffs' counsel's hourly rates to be reasonable considering counsel's experience, skill, and areas and level of expertise in the area of pizza delivery driver litigation. This Court finds that compensating counsel for their lodestar amount is be reasonable in light of the value of services on an hourly basis, and that no lodestar multiplier is necessary.

### e.     Complexity of Litigation

As previously discussed, this case was a complex wage and hour collective action with

12

unresolved legal questions and substantial factual investigation, to which Plaintiffs' counsel brought unique expertise. This Court thus finds that this factor also weighs in favor of awarding Plaintiffs' counsel their lodestar amount.

### f. Skill of Counsel

The professional skill and standing of the attorneys involved weighs in favor of compensating Plaintiffs' counsel for their generated lodestar. Both Plaintiffs and Defendants are represented by highly qualified counsel with substantial experience in federal courts and class action litigation. (ECF No. 44-2). Class counsel is experienced in litigation on behalf of restaurant and other low-wage workers, has successfully represented plaintiffs in many delivery driver reimbursement actions, and has achieved several significant legal results for clients related to delivery driver wage and hour litigation. (*Id.*). This factor weighs in favor of awarding Plaintiffs' counsel their lodestar amount.

### C. Reimbursement of Expenses

Class counsel also seeks an award of $2,590.00 for expenses from the filing fee, service of process fees, costs of sending the FLSA collective action notice, and costs associated with hiring a forensic accountant to analyze Defendants' financial status. (ECF No. 44 at 17). The parties also seek approval of up to $2,500 in administration fees, in the event that Defendants choose to retain a claims administrator. (*Id.*). Under the common fund doctrine, Plaintiff's counsel will be entitled to reimbursement expenses that were reasonable and necessary in resolving a case. *Mullins*, 2019 WL 275711, at *5 (approving request for $6,310.55 in expenses resulting from filing fees, mediation costs, and class notice costs). The requests for reimbursement here are reasonable and necessary to the resolution of this matter, and their reimbursement should be approved.

### D. Service Awards

The Sixth Circuit has found that service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." *In re S. Ohio Correctional Facility*, 175 F.R.D. 270, 273–76 (S.D. Ohio 1997). The settlement agreement here allocates $5,000 each to named Plaintiffs Scott Honaker and Rhonda Honaker. (ECF No. 44 at 17). The Honakers participated in each stage of settlement negotiations and helped evaluate the accuracy of data provided by Defendants to Plaintiffs' counsel. (*Id.* at 18). The proposed amount of $5,000 each also falls within the range of service awards approved in similar delivery driver wage and hour suits in this Circuit. *See, e.g.*, *Casteel v. Antonio's Pizza, Inc.*, No. 1:18-cv-1277, Doc. 52 (N.D. Ohio May 17, 2019) (approving a $10,000 service award for delivery driver), *Mullins*, 2019 WL 275711, at *6 (same); *Arledge*, 2018 WL 5023950, at *6 (same).

This Court finds that Plaintiffs' involvement in the case was substantial and integral to achieving the award for the opt-in Plaintiffs. The Plaintiffs' assistance also "furthered the important public policies underlying the Fair Labor Standards Act." *Mullins*, 2019 WL 275711, at *6. Accordingly, this Court approves the service awards of $5,000 to Scott Honaker and Rhonda Honaker as appropriate compensation for their significant participation in this litigation.

### III. CONCLUSION

For the reasons stated above, the Court **GRANTS with modifications** the Motion for Settlement Approval, including the request for expenses and the request for service awards in the amount of $5,000 each to Plaintiffs Scott Honaker and Rhonda Honaker, and orders that this case be **DISMISSED WITHOUT PREJUDICE**. This Court awards Plaintiff's counsel $36,850.50 in

attorney's fees. The parties are directed by the Court to file a Dismissal Order dismissing this case with prejudice not later than thirty (30) days after the entry of this Order. The Court will retain jurisdiction over this action only for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Settlement Agreement, including for overseeing the distribution of settlement funds. The parties shall abide by all terms of the Settlement Agreements, which are incorporated herein, and this Order.

    **IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: April 5, 2021**